# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 13 C 99 | **DATE** | 4/24/2013 |
| **CASE TITLE** | U.S. ex rel. Paul Raymond Carroll vs. Sheriff Richard Meyers | | |

**DOCKET ENTRY TEXT:**

For the reasons stated below, Carroll's habeas petition is denied.

*/s/ Philip G. Reinhard*

■ [ For further details see text below.]   Electronic Notices.

## STATEMENT - OPINION

Paul Carroll, a pretrial detainee currently housed in the Winnebago County Jail, filed a habeas petition pursuant to 28 U.S.C. § 2241, claiming that the state trial court violated the Eighth Amendment by setting his bail excessively high. Jurisdiction of the habeas petition is proper under 28 U.S.C. §§ 1331 and 2241(c)(3).

The Eighth Amendment, as applied to the states through the Fourteenth Amendment's Due Process Clause, *Robinson v. California*, 370 U.S. 660, 666 (1962), provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Bail is not excessive if it is "reasonably calculated" to assure the defendant's presence at trial. *United States ex rel. Fitzgerald v. Jordan*, 747 F.2d 1120, 1133 (7th Cir. 1984) (citing *Stack v. Boyle*, 342 U.S. 1, 5 (1951)). This court is mindful of the fact that it is not a federal court's function to perform a de novo review of petitioner's bond hearing, since doing so would "represent an unwarranted interference in the operation of the state's criminal justice system." *Id.* Accordingly, to obtain habeas corpus relief due to excessive bail, a petitioner must show that the state court acted arbitrarily in setting bail. *United States ex rel. Garcia v. O'Grady*, 812 F.2d 347, 352 (7th Cir. 1987). An arbitrary amount "would have to be beyond the range within which judgments could rationally differ in relation to the apparent elements of the situation." *Id.*

Carroll was arrested on January 5, 2011. The next day he was charged in the Circuit Court of Winnebago County with the following five counts: armed violence, 720 ILCS 5/33A-3(a), a Class X felony which carries a possible sentence of 6 to 30 years in prison and a fine of up to $25,000 (Count I); possession with the intent to deliver cannabis, 720 ILCS 550/5(d), a Class 3 felony which carries a possible sentence of 2 to 5 years in prison and a fine up to $50,000 (Count II); unlawful use of weapons, 720 ILCS 5/5/24-(a)(7)(iii), a Class 3 felony which carries a possible sentence of 2 to 5 years in prison and a fine up to $25,000 (Count III); aggravated assault, 720 ILCS 5/12-2(a)(6), a Class 4 felony which carries a possible sentence of 1 to 3 years in prison and a fine of up to $25,000 (Count IV); and unlawful use of weapons, 720 ILCS 5/24-1(a)(2), a Class A misdemeanor which carries a possible sentence of up to one year and a possible fine of up to $2,500 (Count V). His bond was initially set at $1,000,000, which would require Carroll to post 10% of that amount to secure his release.

On February 4, 2011, Carroll brought a motion to reduce his bond. Judge John Truitt of the Seventeenth Judicial Circuit Court heard evidence regarding the bail factors enumerated in the Illinois Code of Criminal Procedure during the hearing. *See* 725 ILCS 5/110-5. Carroll's wife testified that she could raise $10,000 for Carroll's bond, and that Carroll would live at her residence in Rockford, Illinois if he were released. Carroll also testified that he would

obey all bond conditions if he were released. On cross-examination Carroll was questioned about missing court dates relating to two traffic tickets in 2003. The Winnebago County Assistant State's Attorney then made the following proffer: law enforcement officers obtained and executed a warrant the evening of January 5, 2011 at Carroll's residence in Winnebago County. The officers knocked on the door, announced their presence and office, and gained entry by force when no one opened the door. Upon entering the residence, the officers observed Carroll approximately 12 to 15 feet from the door pointing a black handgun directly at one of the officers. Carroll then ran into the interior of the house, dropping the gun before getting caught by the officers. The officers found the gun, a Glock 22, .40 caliber pistol with one round in the chamber and a fully loaded fifteen round magazine. Additionally, the officers discovered a Colt AR-15 .223 caliber rifle with tactical attachments with one round in the chamber and a fully loaded 30 round magazine; two loaded Remington model 870 12 gauge tactical style shotguns; a gas mask; a police style tactical belt and holster containing a loaded Glock model 21; a .45 caliber pistol with a round in the chamber and fully loaded magazine; a tactical load bearing vest containing a loaded Glock model magazine; a loaded .223 caliber 30 round magazine and multiple 12 gauge rounds; a Taser; several quarter sticks of dynamite; 1,500 rounds of ammunition for various firearms; four tactical knives; and a live M-67 fragmentation grenade. The officers also confiscated 339 grams of cannabis and $2,440 in cash. Officers arrested Carroll and two other individuals who were inside the residence at the time of the search.

After hearing arguments from both sides, Judge Truitt denied Carroll's motion to reduce the bond amount. In so doing, Judge Truitt stated the following:

> Court's considered the testimony, the proffer, the Pretrial Services Report, arguments and representations of counsel. Court noticed the same thing in the Pretrial Services Report that there were two – two different times ex parte findings on traffic cases which an ex parte finding would normally indicate a failure to appear. Other than that, he has minimal prior record. But the proffer tendered by the State is of extreme concern. There was virtually an arsenal in that home including a live grenade, at least according to the proffer. I believe this defendant represents a significant risk to the community if released.

Carroll brought a second motion to reduce bond on May 4, 2011, again before Judge Truitt. Carroll's attorney produced four witnesses at the hearing. Carroll's uncle testified that he would employ Carroll if he were released. Carroll's father-in-law testified that Carroll would reside with him, his wife and his daughter (Carroll's wife) if Carroll were released, that he would take responsibility for bringing Carroll to court, and that since being in jail Carroll had converted to the Baha'i religion, which teaches non-violence. Carroll's mother-in-law testified to the same effect. Finally, a longtime acquaintance of Carroll's testified that he was also a member of the Baha'i faith and that he believed Carroll's conversion was sincere.

The Assistant State's Attorney again made a proffer of what the evidence would show at Carroll's trial, which was substantially similar to the proffer made at the February 4th hearing. Judge Truitt denied Carroll's motion. After acknowledging Carroll's "strong family support system," religious conversion, and lack of a criminal history, Judge Truitt stated his justification for denying the motion:

> A million dollars is a lot of money, I understand that. The court's concern, quite frankly, is not only the number of weapons that were recovered in the home but the type of weapons. This home was armed to the hilt, and for lack of a better word ready for war with military grade weapons and ammunition and apparel apparently. It's pretty concerning. In spite of defendant's achievements while in custody, the court is of the opinion that the defendant does represent a danger to the community, and there is some indication as to his likelihood in making future court appearances when . . . eight to eight and a half years ago he didn't appear in traffic court on two different occasions. The motion is going to be – even in light of the new evidence of a place to live, of his conversion to the Baha'i faith, the motion is going to be heard and denied.

Carroll appealed the decision to the Illinois Appellate Court for the Second Judicial District, which affirmed the trial court's decision. The Illinois Supreme Court subsequently denied Carroll's petition for leave to appeal on November 26, 2012. *People v. Carroll*, 979 N.E.2d 880 (Ill. 2012). Carroll filed a petition for writ of habeas corpus

| STATEMENT - OPINION |
|---|

under 28 U.S.C. § 2254 in federal court on January 6, 2013. The Court dismissed the petition without prejudice and instructed Carroll to properly re-file the petition under 28 U.S.C. § 2241, which he did on February 19, 2013. The Winnebago County State's Attorney filed a response on behalf of respondent, Winnebago County Sheriff Richard Meyers.

Carroll contends that the $1,000,000 bond violates the Eighth Amendment because it is unreasonably excessive. He asserts that Judge Truitt incorrectly considered Carroll's possession of firearms and his failure to appear in court on two previous traffic tickets when setting bail. Carroll also argues that Judge Truitt failed to properly account for Carroll's lack of a criminal record and his ties to the community.[1]

Contrary to what the petition suggests, the record demonstrates that Judge Truitt carefully and properly considered several Illinois statutory factors, *see* 725 ILCS 5/110-5, in determining Carroll's bail amount. He heard evidence regarding the quantity and category of weapons and ammunition found in the residence, Carroll's conduct of initially resisting arrest with a weapon, and his history of missing court dates relating to two previous traffic tickets. Judge Truitt also heard testimony of Carroll's family support and his conversion to the Baha'i faith while in jail. Based on this evidence, Judge Truitt twice announced bail was set based on his concern for public safety and Carroll's history of failure to appear before a court. In light of the evidence presented before the trial court over the course of two hearings, we find that the process by which Judge Truitt set bail was considerate, rational, and not a violation of the Eighth Amendment.

Carroll argues that he is entitled to habeas relief under *Stack v. Boyle*, 342 U.S. 1 (1951), but fails to explain exactly how the case supports his petition. *Stack* holds that bail set at an amount higher than is reasonably calculated to assure the defendant's appearance at trial is "excessive" under the Eighth Amendment. *Id.* at 5. The Supreme Court in *Stack* found that bail was excessively high under the Eighth Amendment where the trial court imposed bail for twelve criminal defendants charged in the same conspiracy at "widely varying amounts," despite the prosecution's failure to provide to the trial court any evidence as to petitioners' actions, involvement in the alleged conspiracy, or trustworthiness to appear at trial. *Id.* at 3. The Supreme Court observed that:

> [t]he Government asks the courts to depart from the norm by assuming, without the introduction of evidence, that each petitioner is a pawn in a conspiracy and will, in obedience to a superior, flee the jurisdiction. To infer from the fact of indictment alone a need for bail in an unusually high amount is an arbitrary act."

*Id.* at 5-6. Here, the Assistant State's Attorney twice made a proffer of what evidence the state would prove at trial, which Judge Truitt explicitly relied on in deciding on Carroll's bail amount. These factors distinguish the case at bar from *Stack*.

Essentially, Carroll's petition argues that he is entitled to habeas relief because Judge Truitt weighed certain factors more heavily than others in setting the bail amount. But even if this court arguably agreed that the bail amount is too great, as the Seventh Circuit has repeatedly observed, "[w]hile we may not necessarily agree with the amount of bail set, we will not overrule the state trial court's determination as to the amount of bail unless its decision was made in an arbitrary manner." *Garcia*, 812 F.2d at 354 (quoting *Fitzgerald*, 747 F.2d at 1134). The caselaw is clear: if the trial court did not set bail arbitrarily, it did not commit an Eighth Amendment violation. *See Stack*, 342 U.S. at 5-6; *Garcia*, 812 F.2d at 354 ("It is [not] a federal district judge's prerogative to second guess a state court's bail decision when the record demonstrates the absence of a constitutional violation."). Here, bail was set on the basis of facts and evidence before Judge Truitt, and was therefore not done arbitrarily.

For the foregoing reasons, Carroll's habeas petition is denied.

---

1. Carroll also posits that the $1,000,000 bail amount was excessive in comparison to bail amounts set for like Class X felony defendants. This assertion is completely unsupported by the record and Carroll's petition.